**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| EFREN GARCIA, Individually and For Others Similarly Situated<br><br>v.<br><br>NES GLOBAL, LLC d/b/a NES FIRCROFT | **Case No.** _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Efren Garcia brings this collective action to recover unpaid overtime and other damages from NES Global, LLC d/b/a NES Fircroft ("NES").

2.      NES employed Garcia as one of its Day Rate Workers (defined below) in Massachusetts and on the Outer Continental Shelf ("OCS").

3.      NES pays Garcia and its other Day Rate Workers by the day.

4.      Garcia and the other Day Rate Workers regularly work more than 40 hours a week.

5.      But NES does not pay Garcia and its other Day Rate Workers overtime.

6.      Instead, NES pays Garcia and its other Day Rate Workers a flat amount for each day worked, regardless of the total number of hours they worked in a workweek (a "day rate"), that NES disguises as hourly pay (NES's "disguised day rate pay scheme").

7.      NES pays Garcia and its other Day Rate Workers according to its disguised day rate pay scheme regardless of any individualized factors.

8.      NES's uniform disguised day rate pay scheme violates the Fair Labor Standards Act ("FLSA") by depriving non-exempt employees (Garcia and the other Day Rate Workers) of overtime when they work more than 40 hours in a week.

**JURISDICTION & VENUE**

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

10.     This Court has personal jurisdiction over NES because of NES's substantial contacts with, and conduct directed towards, Massachusetts, including employing Day Rate Workers (like Garcia) in the Commonwealth and maintaining an office in Boston.

11.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

12.     Specifically, Garcia primarily worked for NES in and around Bedford, Massachusetts, which is in this District and Division.

**PARTIES**

13.     From approximately September 2023 through February 2024, NES employed Garcia as a quality inspector in and around Bedford, Massachusetts and on wind farms along the OCS.

14.     Throughout his employment, NES paid Garcia according to its uniform, illegal disguised day rate pay scheme.

15.     Garcia's written consent is attached as **Exhibit 1**.

16.     Garcia brings this collective action on behalf of himself and all other similarly situated employees who NES paid under its illegal disguised day rate pay scheme.

17.     NES pays each of these employees a flat amount for each day they worked, regardless of the total number of hours they worked in a workweek, which NES disguises as hourly pay.

18.     As a result, NES fails to pay these employees overtime when they work more than 40 hours in a week in willful violation of the FLSA.

19.     The putative collective of similarly situated employees is defined as:

**All NES employees who were paid according to NES's disguised day rate pay scheme at any time during the past 3 years (the "Day Rate Workers").**[1]

20.     NES is a Florida limited liability company headquartered in Houston, Texas.

21.     NES can be served through its registered agent: **CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110**.

## FLSA COVERAGE

22.     At all relevant times, NES was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23.     At all relevant times, NES was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24.     At all relevant times, NES was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce.

25.     At all relevant times, NES has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26.     At all relevant times, Garcia and the other Day Rate Workers were NES's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

---

[1] The Day Rate Workers expressly excludes any individuals who opted into *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.) **and** did not work for NES after the opt-in period closed in the *Alvarez* matter on December 20, 2021, as well as any individuals who opted into *Johnson v. NES Global, LLC*, No. 4:23-CV-04579 (S.D. Tex.), *Hernandez v. NES Global, LLC*, No. 4:23-CV-03803 (S.D. Tex.), or *Rivas v. NES Global, LLC*, No. 4:23-CV-00885 (S.D. Tex.).

27.     At all relevant times, Garcia and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

28.     NES uniformly paid Garcia and the other Day Rate Workers according to its illegal disguised day rate pay scheme.

29.     NES applied its illegal disguised day rate pay scheme to Garcia and the other Day Rate Workers regardless of any alleged individualized factors, such as specific job title or geographic location.

30.     By paying Garcia and its other Day Rate Workers a disguised day rate, NES did not pay them overtime when they worked more than 40 hours in a week.

31.     NES's uniform disguised day rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

32.     NES bills itself as "the world's leading engineering staffing provider spanning the Oil & Gas, Power & Renewables, Infrastructure, Life Sciences, Mining, Automotive, and Chemical sectors worldwide."[2]

33.     To meet its business objectives, NES hires workers, like Garcia and the other Day Rate Workers, who it "staffs" to its clients.

34.     NES uniformly pays these employees (including Garcia and the other Day Rate Workers) according to its illegal disguised day rate pay scheme.

35.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice—NES's disguised day rate pay scheme—for similar work.

---

[2] https://www.nesfircroft.com/about-us/ (last visited April 30, 2024).

36.     For example, NES employed Garcia as a quality inspector staffed to its client (General Electric) in and around Bedford, Massachusetts and on General Electric's wind farms along the OCS from approximately September 2023 through February 2024.

37.     As a quality inspector, Garcia's primary duties included overseeing the work of third-party contractors to ensure wind projects were completed in accordance with General Electric's specifications, as well as well-established industry standards and regulations.

38.     Throughout his employment, Garcia typically worked 12 to 16 hours a day, for 7 days a week, for 3-week hitches.

39.     Garcia works in accordance with the schedule set by NES and its client (GE).

40.     Despite knowing Garcia regularly worked overtime, NES did not pay him overtime wages.

41.     Instead, NES paid Garcia according to its illegal disguised day rate pay scheme.

42.     Specifically, NES paid Garcia $770 each day he actually worked, regardless of the number of hours he worked that day (or that week) and failed to pay him overtime when he worked over 40 hours in a week.

43.     NES attempted to give the appearance of paying overtime by labeling Garcia's day rate as "hourly" pay.

44.     That is, the day rate NES paid Garcia was based on a 12-hour day comprised of 8 hours pay at a purported "straight time" rate and 4 hours pay at a so-called "overtime" rate:

**Straight Time- $55/hr**
**Overtime- $82.50/hr**
**Daily Rate Summarized: $770/day**

45.    Garcia's paystubs reflect NES paid him in increments of 12 hours worked, including:

   a.    72 "hours" (or six 12-hour days):



   b.    84 "hours" (or seven 12-hour days):



   c.    132 "hours" (or eleven 12-hour days):



   d.    144 "hours" (or twelve 12-hour days):



   e.    168 "hours" (or fourteen 12-hour days):



46.    But as noted above, Garcia regularly worked more than 12 hours a day.

47.    Nonetheless, NES required Garcia to record 12 hours a day on his timesheets, regardless of the number of hours he actually worked:

6



48. And Garcia's paystubs make clear NES did not actually pay him on an hourly basis.

49. For example, during the two-week pay period ending on January 26, 2024, Garcia worked 3 days.

50. And NES paid Garcia for 24 hours of so-called "straight time" pay (at $55/hour) plus 12 hours of so-called "overtime" pay (at $82.50/hour):



51. In reality, this is just Garcia's day rate ($770/day) for 3 days worked ($2,310).

52. Again, NES paid Garcia a disguised day rate and failed to pay him overtime when he worked over 40 hours in a week in willful violation of the FLSA.

53.    NES pays all its Day Rate Workers according to the same illegal disguised day rate pay scheme it imposed on Garcia.

54.    That is, NES pays all its Day Rate Workers a day rate (disguised as hourly pay) and fails to pay them overtime when they work more than 40 hours in a week.

55.    Like Garcia, the other Day Rate Workers typically work 12 to 16 hours a day for up to 7 days a week.

56.    And like Garcia, the other Day Rate Workers work in accordance with the schedule set by NES (and its clients).

57.    Despite knowing its Day Rate Workers regularly work overtime, NES does not pay them overtime wages.

58.    Instead, NES pays all its Day Rate Workers a flat amount for each day worked, regardless of the number of hours they worked that day (or that workweek) that NES attempts to disguise as hourly pay.

59.    Under its illegal, disguised day rate pay scheme, NES uniformly fails to pay its Day Rate Workers overtime when they work more than 40 hours in a workweek in willful violation of the FLSA.

60.    Despite misclassifying Garcia and the other Day Rate Workers as exempt, NES never paid them on a "salary basis."

61.    NES does not pay Garcia and its other Day Rate Workers a guaranteed salary that is not subject to reduction based on the quality or quantity worked.

62.    Rather, NES only pays Garcia and its other Day Rate Workers their set day rates for the actual days they work.

63.    If Garcia and the other Day Rate Workers do not work, they do not get paid.

64.     Garcia's and the other Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

65.     Thus, NES never paid Garcia and its other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

66.     Because NES fails to pay Garcia and its other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime.

67.     But NES does not pay Garcia and its other Day Rate Workers overtime when they work more than 40 hours in a week in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

68.     Garcia incorporates all other paragraphs by reference.

69.     Like Garcia, the other Day Rate Workers are victimized by NES's illegal disguised day rate pay scheme.

70.     Other Day Rate Workers worked with Garcia and indicated they were paid in the same manner, performed similar work, and were subject to NES's same illegal disguised day rate pay scheme.

71.     Based on his experience, Garcia is aware NES's illegal disguised day rate pay scheme is imposed on the other Day Rate Workers.

72.     The Day Rate Workers are similarly situated in the most relevant respects.

73.     Even if their precise job titles and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay.

74.     Rather, NES's uniform disguised day rate pay scheme renders Garcia and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

75.     Therefore, the specific job titles or precise job locations of the various Day Rate Workers do not prevent collective treatment.

76.     NES's records reflect the number of days and/or hours the Day Rate Workers worked each workweek.

77.     NES's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a week.

78.     The backwages owed to Garcia and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

79.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to NES's records, and there is no detraction from the common nucleus of liability facts.

80.     Therefore, the issue of damages does not preclude collective treatment.

81.     Garcia's experiences are therefore typical of the experiences of the other Day Rate Workers.

82.     Garcia has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent collective treatment.

83.     Like each Day Rate Worker, Garcia has an interest in obtaining the unpaid wages owed under federal law.

84.     A collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

85.     Absent this collective action, many Day Rate Workers will not obtain redress for their injuries, and NES will reap the unjust benefits of violating the FLSA.

86.     Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

87.     Indeed, the multiplicity of actions would create a hardship to the Day Rate Workers, the Court, and NES.

88.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

89.     Garcia knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

90.     NES's illegal disguised day rate pay scheme deprived Garcia and the other Day Rate Workers of the overtime wages they are owed under federal law.

91.     There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

92.     The Day Rate Workers are known to NES, are readily identifiable, and can be located through NES's business and personnel records.

### NES's FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

93.     Garcia incorporates all other paragraphs by reference.

94.     NES knew it was subject to the FLSA's overtime provisions.

95.     NES knew the FLSA required it to pay non-exempt employees, including the Day Rate Workers, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

96.     NES knew each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

97.     NES knew it paid its Day Rate Workers on a daily basis.

98.     NES knew it paid its Day Rate Workers a day rate (with no overtime for their hours worked over 40 in a week).

99.     NES knew it did not pay its Day Rate Workers on a "salary basis."

100.    NES knew it did not pay its Day Rate Workers any guaranteed salary that was not subject to reduction based on the number of days worked.

101.    NES knew that any "salary" the Day Rate Workers purportedly received was not "reasonably related" to their actual earnings.

102.    Thus, NES knew its day rate pay scheme did not satisfy the "salary basis" test.

103.    NES knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to its Day Rate Workers.

104.    Nonetheless, NES uniformly misclassified its Day Rate Workers as exempt and refused to pay them overtime.

105.    NES knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA (and MWHL).

106.    Indeed, NES has been sued repeatedly for failing to pay workers overtime, including for paying them on a day rate basis. *See*, *e.g.*, *Johnson v. NES Global, LLC*, No. 4:23-CV-04579 (S.D. Tex.); *Castillo v. NES Global, LLC*, No. 2:23-CV-02628-WBS-JDP (E.D. Cal.); *Hernandez v. NES Global, LLC*, No. 4:23-CV-03803 (S.D. Tex.); *Rivas v. NES Global, LLC*, No. 4:23-CV-00885 (S.D. Tex.); *Molleur v. NES Global, LLC*, No. 1:22-CV-00777 (D.N.M.); *Sachin-Amin v. NES Global, LLC*, No. 8:21-CV-00567 (C.D. Cal.); *Richardson v. NES Global, LLC*, No. 4:20-CV-00223 (S.D. Tex.); *Alvarez v. NES Global, LLC*, No. 4:20-CV-01933 (S.D. Tex.).

107.    NES knowingly, willfully, and/or in reckless disregard carried out its illegal day rate pay scheme that systematically deprived the Day Rate Workers of overtime for their hours worked over 40 in a workweek in violation of the FLSA.

### NES'S FLSA VIOLATIONS WERE NOT DONE IN GOOD FAITH

108.    Garcia incorporates all other paragraphs by reference.

109.    NES did not seek the advice of counsel regarding classifying its Day Rate Workers as exempt.

110.    NES did not receive advice from counsel regarding classifying its Day Rate Workers as exempt.

111.    NES did not rely on the advice of counsel in deciding to classify its Day Rate Workers as exempt.

112.    NES did not seek the advice of counsel regarding paying its Day Rate Workers a day rate with no overtime.

113.    NES did not receive advice from counsel regarding paying its Day Rate Workers a day rate with no overtime.

114.    NES did not rely on the advice of counsel in deciding to pay its Day Rate Workers a day rate with no overtime.

115.    NES did not investigate whether its day rate pay scheme satisfied the "salary basis" test.

116.    NES did not investigate whether its Day Rate Workers were non-exempt.

117.    NES's decision to misclassify its Day Rate Workers as exempt was neither reasonable nor made in good faith.

118.    NES's decision to pay its Day Rate Workers according to its disguised day rate pay scheme was neither reasonable nor made in good faith.

119.    NES's decision not to pay its Day Rate Workers overtime was neither reasonable nor made in good faith.

**CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

120.    Garcia incorporates all other paragraphs by reference.

121.    Garcia brings his FLSA claims as a collective action on behalf of himself and the other Day Rate Workers pursuant to 29 U.S.C. § 216(b).

122.    NES violated, and is violating, the FLSA by employing non-exempt employees (Garcia and the other Day Rate Workers) in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

123.    NES's unlawful conduct harmed Garcia and the other Day Rate Workers by depriving them of the overtime wages they are owed.

124.    Accordingly, NES owes Garcia and the other Day Rate Workers the difference between the rate actually paid and the proper overtime rate.

125.    Because NES knew, or showed reckless disregard for whether, its disguised day rate pay scheme violated the FLSA, NES owes Garcia and the other Day Rate Workers these wages for at least the past 3 years.

126.    NES is also liable to Garcia and the other Day Rate Workers for an amount equal to all their unpaid overtime wages as liquidated damages.

127.    Finally, Garcia and the other Day Rate Workers are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## JURY DEMAND

128.    Garcia demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Garcia, individually and on behalf of the other Day Rate Workers, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

b.    An Order finding NES liable to Garcia and the other Day Rate Workers for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid wages;

c.    A Judgment against NES awarding Garcia and the other Day Rate Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.    An Order awarding attorney's fees, costs, and expenses;

e.    Pre- and post-judgment interest at the highest applicable rates; and

f.    Such other and further relief as may be necessary and appropriate.

Dated: May 3, 2024.                                  Respectfully submitted,

                                                     **GORDON LAW GROUP LLP**

                                                     By: */s/ Philip J. Gordon*
                                                     Philip J. Gordon
                                                     Mass. BBO# 630989
                                                     Kristen M. Hurley
                                                     Mass. BBO# 658237
                                                     585 Boylston Street
                                                     Boston, Massachusetts 02116
                                                     Phone: (617) 536-1800
                                                     Fax:     (617) 536-1802
                                                     pgordon@gordonllp.com

                                                     Michael A. Josephson*
                                                     TX Bar No. 24014780
                                                     Andrew W. Dunlap*
                                                     TX Bar No. 24078444
                                                     **JOSEPHSON DUNLAP, LLP**
                                                     11 Greenway Plaza, Suite 3050
                                                     Houston, Texas 77046
                                                     Phone: (713) 352-1100
                                                     Fax:     (713) 352-3300
                                                     mjosephson@mybackwages.com
                                                     adunlap@mybackwages.com

                                                     Richard J. (Rex) Burch*
                                                     TX Bar No. 24001807
                                                     **BRUCKNER BURCH, PLLC**
                                                     11 Greenway Plaza, Suite 3025
                                                     Houston, Texas 77046
                                                     Phone: (713) 877-8788
                                                     Fax:     (713) 877-8065
                                                     rburch@brucknerburch.com

                                                     *Pro hac vice applications forthcoming*

                                                     **ATTORNEYS FOR GARCIA**
                                                     **& THE DAY RATE WORKERS**